MoIlvaine, J.
We will first consider the obj ections made-to the verdicts.
1. It is claimed that the testimony did not warrant the-findings that the deaths of plaintiff’s intestates were caused in whole or in part by the negligence of the defendant.
We think the testimony shows that the crossing where Mr. and Mrs. Sipes were.killed was a dangerous one — approached by the railroad from the north through a cut-which tended to deprive persons on the highway approaching the crossing of the opportunity of either seeing or hearing an approaching train. Conceding that the train-hell was rung during its passage through the whole length of the cut, it is nevertheless quite certain that the whistle was not used to signal the approach of the train until it had reached a point within 300 feet of the crossing — a distance over which the train passed in four seconds of time..
That the whistle is a more effective signal ■ of warning than a bell, can not be doubted ; and where the approach to-the crossing is such as this, it is perhaps the only efficient signal. This was a question for the jury; and we can not say that the omission to blow the whistle at a greater distance from the crossing, considering the character of the approach and the rapidity of the train, did not justify the-jury in finding that the collision was caused by the negligence of those in charge of the train.
2. It is also claimed that the findings of fact, that the deceased did not contribute to their deaths by their own negligence, were contrary to the testimony.
It must be admitted that each jury must have so-' found, in order to arrive at the verdicts rendered.
*636 In cases where such issues are made, the question of •contributory negligence on the part of the plaintiff or his intestate, and of negligence on the part of the defendant causing the injury complained of, should be considered and ■determined upon the same principles and by the same rules -exactly. There is no presumption of negligence, as against either party, except such as arises upon the facts proved Indeed, the presumption of law is that neither' party was •guilty of negligence, and such presumption must prevail, until overcome by proof. As a general rule, the existence •of negligence on either side is a fact to be ascertained by the jury, under proper instructions from the court. In these cases, the question of contributory negligence was submitted to the jury, with instructions from the court, which, we may say, were unusually instructive and proper. •(Whether the defendant was entitled to certain instructions which were refused, will be hereinafter considered.) Each -of these cases, upon the whole testimony bearing on the -question of contributory negligence, was such, that, in our judgment, it would have been error for the court to have withdrawn it from the jury, or to have instructed them to ■find that contributory negligence existed. The jury found the non-existence of -such negligence, and we can not say -the finding was clearly against the weight of evidence.
The testimony undoubtedly shows that the deceased were well acquainted with the crossing, and knew its dangerous -character; and it also seems clear that they did not, in fact, discover the approach of the train until they had reached, or were within a few feet of the crossing. But to say nothing of the conflict of the testimony, we think the •circumstances which surrounded them ; the doubt whether they could have heard or seen the approaching train before they did; and as to their, exact location at the time it was •discovered Approaching ; their situation, not only in reference to the track and the train, but also as to other conditions which may have required their attention, etc., brought the case so peculiarly within the province of -the j ury, for the purpose of weighing the circumstances, *637 drawing inferences, and testing their conclusions by the rule of ordinary prudence, that a majority of the court do-not feel authorized to interfere with the verdict, especially as the same result has been reached, upon substantially the same state of proof, by four separate and distinct juries.
3. The court refused, in the case of Wilson Sipes, to instruct the jury as follows: “ That plaintiff’s intestate was-bound, under any circumstances, without signs or signals,., to use his eyes and ears to the extent of his opportunity, to hear, see, and avoid danger, and an omission to do so was'» negligence on his part, which will prevent a recovery.” In refusing to charge the above, as requested, it is claimed there was error.
After defining ordinary care, such as the law required the plaintiff’s intestate to exercise, the court did charge the j ury, however, as follows :
“ And therefore, if the intestate, before going upon the-crossing, did not look up and down the track to see whether-a train was approaching, or if he did not use his ears and eyes so far as he had an opportunity to do so, or if his-hearing was defective, or if the noise of the wagon prevented his hearing in any degree, you will take the same into-consideration, or any other circumstances calculated to influence the conduct of a prudent person, bearing in mind, that whatever the facts and circumstances in the case maybe, the proposition you have to determine is, whether Mr. Sipes exhibited ordinary care under the circumstances. If,,, in the exercise .of common prudence and caution, the intestate could have avoided the accident, then the plaintiff can. not recover. ... If the intestate, under a mistaken-judgment that he could do so safely, after seeing the train,, and before going upon the crossing, undertook to cross-ahead of the train, this would be such negligence as would defeat a recovery.”
A similar request was refused, and a similar charge was-given, in the Eleanor Sipes ease.
*638 In the presentation of these cases, as well as two other -cases* which have been considered in connection with them, able arguments and many authorities have been made and ■cited, pro and con, on the question, whether an omission to look and listen for an approaching train, before attempting to cross a railroad track, is, as matter of law, such negligence on the part of the person attempting to cross, as will preclude his recovery for an injury done by a passing train while crossing the track.
Within the compass to which I intend to limit this opinion, it is impossible to review the cases cited, but nevertheless it is proper to acknowledge the substantial aid we have received from counsel and adjudicated cases, in coming to the conclusions about to be announced.
It is unquestionably true that, ordinary prudence requires a person in the full enjoyment of his faculties and senses to use them, before attempting to cross a known railroad track, for the purpose of discovering and avoiding danger from a passing train : and a failure to do so, without a reasonable excuse therefor, is negligence, and will defeat an action for .an injury to which such negligence contributed.
This rule does not, in any wise, impinge on the doctrine which recognizes the right of a traveler on a public highway to the use of the crossing as co-ordinate with the right of the railroad company, but it results as a necessity from the difference of the modes in which the respective roads are made subservient to the public use.
It must be observed, tbat the rule as above stated, does not preclude a recovery in all cases where the injured party omits to employ his senses to discover and -avoid injury, even though the omission may be regarded as negligent; but only in those cases where the omission contributes to the injury. The law in cases of mutual negligence, is, that although there may have been negligence on the part of *639 •the plaintiff, yet, unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant’s negligence, he is entitled to recover. Timmons v. Central Ohio R. R. Co., 6 Ohio St. 105. It is no case of mutual contribution to an injury, where the injured party could not, by the exercise of due care, have avoided the consequences of another’s carelessness,
Again, the failure to look or listen for an approaching train, though such failure may contribute to the injury, can not, under all circumstances, be regarded as negligent. Whether it is so or not depends on the circumstances of the particular case. For instance, other dangers, as well as those from the approaching train, may be impending, and they may be su*ch as demand the entire attention of the person about to cross the track; and if so, a prudent person would be excused from looking or listening for the train. Indeed, the exercise of ordinary care to avoid an injury is all the law requires; and no one can be held to be negligent who exercises such care. True, when the danger is imminent and human life is at stake, great precaution should be exercised; but this is only ordinary care under the circumstances ; because persons of ordinary prudence, under such circumstances, exercise great caution and care. When, therefore, a person about to cross a railroad track, under a given state of circumstances, exercises that degree and amount of care which prudent persons usually exercise under like circumstances, he is without fault. In other words, when the circumstances are such that prudent persons would not ordinarily look or listen for an approaching train, there is no negligence in omitting to look or listen.
If this view be correct, it is plain as a general rule, that, whether contributory negligence existed or not, is a mixed question of law and fact; that is to say, a fact for the jury to find from such testimony as the law regards as competent to prove it; and to be found in accordance with such rules as the court may give to the jury for their guidance.
Where, however, all the material facts in the case are undisputed, or are found by the jury, and admit of .no *640 rational inference but that of negligence, or that of due care, it is no doubt the duty of the court to say to the juryy that,' as matter of law, the facts so appearing amount to* negligence, or to due care, as the case may be; as it would be the duty of the court to determine, as a question of law, what judgment should be rendered upon a special verdict. Rut, on the other hand, if the testimony is conflicting, the facts uncertain, or the proper inferences to be drawn from the facts and circumstances doubtful, then it would be error for the court to withdraw the case from the jury, or direct them to return a particular verdict.
From what has been said, it follows that where a party requests the court upon a hypothetical statement of the case, such as would entitle him to a verdict, to instruct the jury to render a verdict in his favor, it is the duty of the court to instruct the jury, to so render their verdict, if they find the facts to be as assumed, provided the assumed statement embraces all the material facts in the case; but if the statement omits material facts upon which testimony has been offered, and which, if found by the jury to be against the-party asking the instruction, would change the result of' the case, then the court may properly refuse to give any instruction in relation to the hypothetical case.
When tested by the principles above stated, it is clear that there was no error in refusing to give the instruction; asked for by the defendant below.
■ It is not true, as matter of law or of fact, that the plaintiff’s intestate was guilty of negligence which would prevent a recovery, if, under any circumstances, without signs- and signals, he omitted to use his eyes and ears to the extent of his opportunity, to see, hear; and avoid danger.
In the first place, if the use of his eyes -and ears to the. extent of his opportunity would not have prevented the collision, he was not guilty of contributory negligence.
In the second place, if the circumstances were such as would have excused a person of ordinary prudence from' looking or listening for the approaching train, he was not guilty of negligence at all.
*641 In the third place, the qualifying words found-in the request — to wit, “to the extent of his opportunity” — do not relieve the proposition from objection. It was claimed ora the trial, and the testimony tended to prove the fact, that the deceased had no opportunity to -see -or hear the train until it was too late to avoid the collision. If the jury had so found the fact to 'be, the verdict should -have been for the defendant, according to the request, although the exercise of due care on the part of the intestate “'to the extent, of his opportunity,” could not have avoided the consequences of the defendant’s negligence. This, as we above stated, is not the law.
4. The original actions were prosecuted under the statute-for the benefit of tbe next of kin of the intestates. The next of kin were their four children, three of whom were-with their parents in the wagon at the time of the collision. On the trial, defendant requested the court to charge the-jury that if the persons for whose benefit the actions were-brought, were guilty of a want of ordinary care which contributed to the injury, a recovery could not be had for their benefit. This request was properly refused; because, first, the statute gives the right of action to the personal representative upon the same conditions that would have entitled the party injured to an action if death had not ensued. If Mr. and Mrs. Sipes had not died, and had not been guilty of contributory negligence, their right of action for the-negligence of the defendant would not have been defeated by reason of the negligence of third persons, although such persons may have stood to them in the relation of next of kin.
Again, the amount recovered in such cases is ,a gross-Bum, which the statute directs to be distributed to the next of kin, in the proportions provided by law-in relation to the distribution of personal estates. If contributory negligence on the part of some of the next of kin would defeat a recovery as to them, it would -also defeat a recovery for the benefit of those who in nowise contributed to the injury.
*642 We find no error in these records for which the judgments, ■or either of them, should be reversed.

Judgment affirmed.

White and Rex, JJ., concurred.

 Baltimore and Ohio R. R. Co. v. Whittaker, and Marietta and Cincinnati R. R. Co. v. Picksley, reported on pages 642 and 654 of this volume, to which 'the reader is referred for arguments and authorities on this point.—Rep.